**FIDALGO ISLAND PACKING CO.**

v.

**PHILLIPS et al.**

No. 6865–A.

District Court, Alaska

First Division, Juneau.

May 7, 1954.

H. L. Faulkner (Faulkner, Banfield & Boochever), Juneau, Alaska, for plaintiff.

Edward A. Merdes, Asst. Atty. Gen., Alaska, for defendant.

FOLTA, District Judge.

Plaintiff, a salmon packer, and intervenor, a cannery employee, seek to enjoin the enforcement of Regulation 10, promulgated June 29, 1953, by the then. Acting Director of the Employment Security Commission, establishing seasonal periods for employers in the canned salmon industry, on the grounds that it is invalid and that its enforcement will injuriously affect them, and in support thereof contend:

(1) That the defendant had no authority to make Regulation 10. because (a) the authority previously delegated to him expired with the abolition of the Unemployment Security Commission on June 26, 1953, by Chapter 82, S.L.A. 1953; (b) the regulation does not conform to the formula prescribed by Section 7 of Chapter 99, S.L.A.1949, for the determination of seasonal and nonseasonal employment; and (c) that prior to its issuance no notice was given to, nor any opportunity to be heard afforded, those affected by the regulation;

(2) That it selects salmon packers only and excludes others engaged in seasonal activities, particularly those engaged in construction, and, hence, is discriminatory in its operation as between such employers and as between their nonresident and resident workers.

The defendant contends:

(1) That neither the plaintiff nor the intervenor may challenge the validity of the regulation because (a) they failed to exhaust the administrative remedy of appeal provided by Chapter 99, S.L.A. 1953; and (b) that the plaintiff and intervenor have failed to show any irreparable injury.

In opposition to the plaintiff's first contention the defendant argues that the authority of the defendant to promulgate the regulation was not affected by the repeal of the prior law creating the Commission because (a) the new Commission was in existence; and (b) the statute repealed was simultaneously re-enacted.

The canned salmon and the construction industries are fairly comparable. Both depend to a great extent on nonresident workers who come into the Territory in the spring and leave in the late summer or early fall. In both employ-

ment is at its peak in July and at its lowest in January and February. To illustrate, in 1953, which is typical of recent years, as against 13,680 employed in the canned salmon industry in July and 624 in midwinter the construction industry employed 15,709 and 3818. The Commission has declared only the salmon industry to be seasonal. Although proportionate contributions are made by both industries to the unemployment fund, the employees of the canned salmon industry are paid benefits only if they are unemployed during the seasonal periods fixed by the Commission, whereas the employees of the construction industry receive benefits over the entire year, which in many, if not most cases, amount to far more than their contributions. In 1953 these amounted to $1,828,017 for nonresident workers. It is not surprising, therefore, to learn that despite the fact that employment has been at an all-time high in recent years, due to defense construction, the fund has nevertheless dwindled steadily. In 1953 contributions and benefit payments totaled $4,101,000 and $5,640,783 respectively. At the same time the ratio of reserves to taxable pay rolls, which must be maintained at a certain level before experience rating credits may be allowed employers, has decreased from 21.82% in 1946 to 5.62% in 1953. On March 31, 1954, and April 24, 1954, the fund amounted to $5,327,-213.57 and $4,380,000 respectively, and in 1953 the Commission paid out in benefits approximately 40% more than it received in contributions.

An employee who earns at least 80% of his wages during the year in seasonal employment is classified as a seasonal worker and is eligible to receive unemployment benefits only if unemployed during the seasonal period fixed for his employer by the Commission, whereas, if he is classed as a nonseasonal worker, he may receive benefits for 26 weeks.

Upon the final hearing the Court declared that it would take judicial notice of the fact that outside construction work in the Territory, except in Ketchi-kan and vicinity, is limited by weather to the period from May to October, and is, therefore, seasonal in fact.

The present Director of the Employment Security Commission has been substituted for his predecessor as defendant.

Section 51–5–1(f), A.C.L.A. 1949, defines the Commission as including any person to whom the Commission delegates its power and duties. Section 51–5–11(d) provides that the Commission may "appoint * * * and prescribe the duties and powers of such officers, accountants, attorneys, experts and other persons as may be necessary in the performance of its duties", and "may delegate to any such person so appointed such power and authority as it deems reasonable and proper for the effective administration of this Act * * *". Pursuant thereto the Commission in 1938 delegated authority to the Director to "make rules and regulations when the Commission is not in session."

Section 51–5–10, A.C.L.A.1949, was repealed by Chapter 82, S.L.A.1953, effective June 26, 1953. The effect of this was the abolition of the Commission. Chapter 83, S.L.A.1953, effective June 26, however, substantially reenacted the provisions repealed. Since the terms of the several members of the Commission were originally fixed by statute to expire at different times, implying an intention to give it continuity, it is clear that in enacting Chapter 83 it was the intention of the Legislature to start anew with a new Commission. Under the new law the members were appointed on June 24, 1953, but it does not appear when they were confirmed or when they qualified.

Chapter 99, S.L.A.1953, made extensive changes in the law by the way of repeal and amendment. Section 7 thereof, prescribing a new formula for determining seasonality of employment and requiring the Commission to make such determination before June 30, became effective April 1, 1953, but the remainder of the Act did not become effective until July 5, 1953. It was under Section 7 of

this Act that the defendant on June 29 promulgated Regulation 10.

This suit was commenced July 29, 1953.

Obviously, the Commission could not function until the new members qualified, met and organized. The first meeting of the Commission was on August 6, 1953, but it appears that it adjourned without taking any action with respect to the attack on Regulation 10. Indeed, it appears that there was a disposition on the part of the Commission to shirk its responsibility in the face of group pressure. On one side were arrayed those engaged in construction activities, the unions and their members, who find it to their advantage to resist classification as seasonal notwithstanding that the character of the industry is clearly seasonal; and on the other those engaged in salmon packing, their unions and members, as well as others engaged in nonseasonal activities, who assert that the failure to classify the construction industry as seasonal results in discrimination against them, deprives them of equal benefits under the law, and imposes greater burdens on them.

On behalf of the plaintiff and intervenor it is argued that, unless Regulation 10 is declared invalid and industries are classified according to their character instead of according to group pressure, the unemployment compensation fund will soon be depleted to the point where under the mandatory provisions of Section 51-5-2(b)(1), A.C.L.A. 1949, contributions will have to be increased and benefits drastically decreased.

The questions presented are:

(1) Should the rule of the exhaustion of administrative remedies be applied to this case?

(2) Is Regulation 10 valid?

(3) Is the injury threatened irreparable?

■ The general rule of course is that one must exhaust his administrative remedies before he may resort to the Courts. I am convinced that, if this rule is applicable to the facts of this case, the plaintiff cannot prevail.

Chapter 99, S.L.A.1953, requires a redetermination by the Commission of seasonal periods of employment according to the formula prescribed by Section 7 thereof, the issuance of a regulation specifying such seasonal periods, the giving of notice thereof to the employer affected, and allows anyone aggrieved to take an appeal to the Commission within 15 days. Neither the plaintiff nor intervenor appealed from Regulation 10. The defendant contends that their failure to exhaust this remedy bars their resort to this Court. On the other hand, the plaintiff and intervenor contend that the authority delegated to the defendant expired with the abolition of the Commission by Chapter 82, that there was no Commission to appeal to until August 6th, when it met for the first time, and that in any event an appeal would have been futile because, when the new Commission finally met in October, it became deadlocked by reason of a tie vote on every major issue and, hence, was unable to function.

The last contention may be disposed of by the observation that the application of the doctrine does not depend on what may be said in retrospect. Here, as in analogous situations, diligence is the criterion. The remaining contentions are in my opinion untenable for, apparently, the new members of the Commission had qualified, and in any event an appeal may be prosecuted although the appellate tribunal is not in session.

But although these contentions would ordinarily be without merit, they may yet be considered in determining whether the circumstances of this case are such as to warrant the conclusion that the doctrine should not be applied.

I turn now to a consideration of this question.

■ The authority delegated to the Director of the Commission was to "make rules and regulations when the Commission is not in session." This clearly contemplates matters arising be-

tween sessions of the Commission such as had not arisen by, or were not foreseen at, the time of adjournment. Obviously, it cannot be said that the determination of seasonal periods, to say nothing of the redetermination thereof, by the new Commission according to the formula prescribed by Section 7 of Chapter 99, after the intentional abolition of the old Commission, was a matter arising between sessions. On the contrary, it was the first task of the new Commission.

The law expressly requires the Commission to determine seasonality and provides, Section 7(c)(1), that "No such employer or operating unit shall be deemed to be seasonal unless and until so determined by the Commission", and, further, that "When the Commission has finally determined seasonal periods, it shall issue a regulation specifying the seasonal periods during which benefits shall be payable to eligible beneficiaries for unemployment occurring within the benefit year affected by such regulation". § 7(c)(2).

■■ Generally speaking, the limit of the authority of an administrative officer is the carrying out of a law according to its terms. Here, under the authority delegated, the defendant assumed the exercise of what appears to be a discretionary power. The defendant makes the point that the regulation does not determine the seasonal periods but merely specifies them. Not only is this distinction immaterial, but the argument overlooks the fact that it is the regulation which gives effect to the determination of seasonal periods and is the means by which such determination is enforced. I am of the opinion, therefore, that the determination of seasonality was neither delegated nor intended to be delegated. An examination of the law discloses that the determination of seasonality is not only one of the most important functions of the Commission but also one that must be performed before the law can become fully operative. It is inconceivable that the exercise of this function would be delegated.

Another factor to be taken into consideration, in determining whether the doctrine of the exhaustion of administrative remedies should be applied to this case, is the validity of the regulation. It not only appears that the regulation ignores the mandate of the law that all employers and employing units be classified as seasonal and nonseasonal and the seasonal periods for each established, but also that the regulation classifies the canned salmon industry not by employers or units thereof, but by areas and open seasons as established by the Fish & Wildlife Service, regardless of the disparities between such seasons and the periods of actual operations. The effect of this is to require greater contributions by the employer from which neither the employer nor employee derives any benefit. It also appears that the regulation was adopted without notice and without affording those concerned an opportunity to be heard, as prescribed by Section 51–5–11(b).

■ From what has already been said it is clear that the regulation is not within the authority delegated, that it was not promulgated in compliance with statutory provisions, and that it is inconsistent with the law under which it was purportedly made because it selects one seasonal industry and fixes the seasonal periods therefor, whereas the law requires the determination of seasonal periods for all employers, and, hence, is discriminatory in its application and operation.

■■ While the fact that the Commission has been unable to function since its organization, because of the deadlock referred to, would ordinarily be irrelevant on the question of whether administrative remedies have been exhausted, it is nevertheless a circumstance that may be taken into consideration in determining whether the rule ought to be applied. The plaintiff was more likely mistaken then remiss in not availing itself of an appeal, but there is no question of its good faith. Moreover, even had the time not expired, it would seem wrong to require the plaintiff to exhaust

his remedy by way of an appeal in a case in which it would appear that under no circumstances could the regulation ultimately be upheld. Indeed, the very nature of the problems presented poses the question whether the remedy is not judicial, rather than administrative, to which the doctrine of the exhaustion of remedies would not apply. In view of the circumstances of this case, I am of the opinion that the doctrine should not be applied. 39 Cornell Law Quarterly 285; Gonzales v. Williams, 192 U.S. 1, 24 S.Ct. 177, 48 L.Ed. 317; U. S. ex rel. De Lucia v. O'Donovan, 7 Cir., 178 F.2d 876; Public Utilities Commission of Ohio v. United Fuel Gas Co., 317 U.S. 456, 63 S.Ct. 369, 87 L.Ed. 396; Breiner v. Wallin, D.C., 79 F.Supp. 506, 507–508.

The final question is whether the plaintiff or intervenor has shown threatened injury of an irreparable character.

Although it can hardly be said that Regulation 10 is discriminatory on its face, it is clear that, being limited to only one of the many seasonal industries, its operation and enforcement result in discrimination against all employers in the canned salmon industry and their employees. The law clearly requires the classification of employers as seasonal or nonseasonal, and it is not perceived how the law could operate fairly or uniformly until this is done.

The claim of irreparable injury is based, in the main, on the progressive diminution of the fund, which in turn will require greater contributions by, and the loss of credit ratings to, the employer, and decreased benefits to the employee.

The failure to classify the construction industry as seasonal is undoubtedly the largest contributing factor in the process of depletion. In the case of year-round employment, although the employers contribute for the entire year, their employees receive no benefits. The construction industry contributes only for six months of the year or so but its employees may draw the maximum compensation. For example, the maximum contribution, on the first $3,000 of the wages of an employee of the former who receives no benefits, is $81, but an employee of the latter, contributing about half as much, may receive up to $910 in benefits.

A worker in the canned salmon industry is eligible for unemployment relief only if he is not employed during the seasonal period fixed by the Commission, whereas employees in other industries which are in fact seasonal but have not been so classified may receive benefits over the entire year if unemployed. As between resident and nonresident workers in the canned salmon industry, the resident may receive benefits only if unemployed during the period referred to, whereas the nonresident is not so limited. Since all this results in the payment of increased benefits to the favored classes, it accelerates the depletion of the fund, which in turn will require a drastic increase in the rate of employer contributions and a corresponding decrease in benefits to employees. It appears, therefore, that although the plaintiff is required to contribute proportionately to the unemployment compensation fund, the fund is disbursed largely for the benefit of those who become entitled to disproportionate benefits solely by reason of being treated as nonseasonal when in fact their employment is seasonal, and that the payment of such benefits is causing the depletion of the funds, to the prejudice of the plaintiff and intervenor.

The defendant argues that, if the regulation is invalidated, the unemployment compensation fund will be more quickly exhausted because of the necessity of paying benefits to cannery workers on a par with nonseasonal workers. It requires no perspicacity to see that if one entitled to a share of a common fund foregoes his right thereto the process of depletion will be retarded. Aside from the fact that such an argument can have no appeal to a court of equity, it is wholly irrelevant. The paramount objective of the court is justice. The depletion of the fund is of no concern to the court except as it may shed light up-

on the contentions of the parties. It may not be amiss, however, to point out that, apparently, the defendant is concerned with depletion only if the process is accelerated by according the same rights to the plaintiff and the intervenor as all others engaged in seasonal activities receive.

This suffices to show that the threatened injury is irreparable in character. I conclude, therefore, that the plaintiff and intervenor are entitled to have the enforcement of Regulation 10 enjoined.