**Richard E. SULLIVAN, Plaintiff-Appellant,**

v.

**PACIFIC AND ARCTIC RAILWAY AND NAVIGATION COMPANY, Defendant-Appellee.**

**No. 24680.**

United States Court of Appeals, Ninth Circuit.

March 15, 1971.

M. Ashley Dickerson (argued), Anchorage, Alaska, for plaintiff-appellant.

Michael M. Holmes (argued), of Faulkner, Banfield, Boochever & Doogan, Juneau, Alaska, for defendant-appellee.

Before KOELSCH, CARTER and WRIGHT, Circuit Judges.

JAMES M. CARTER, Circuit Judge.

Sullivan brought a common law action for wrongful discharge in the district court against his former employer, Pacific and Arctic Railway and Navigation Company [the Company], accepting the discharge as final and asking for money damages. His appeal from the summary judgment,[1] entered by the District Court, in favor of the Company raises the issue of whether it was necessary for him, under federal or state law, to exhaust his remedies under a collective bargaining agreement before bringing suit. We conclude that exhaustion of administrative remedies was necessary and affirm the judgment.

Sullivan is a longshoreman whose labor union had a collective bargaining

1. The summary judgment dismissed the complaint with prejudice and granted the defendant costs and a reasonable attorney's fee. The parties agreed at oral argument that they have treated the judgment as terminating the action.

agreement with the Company, which is covered by the Railway Labor Act. The Company employed ten regular men and hired other men to work when regular men were off and when there was additional work. Sullivan had been a regular longshoreman but, in April of 1967, resigned from that status. Later, he was classified as an acceptable extra or casual worker. On May 14, 1968, his first day as a temporary replacement for one of the ten regular men, Sullivan refused his work assignment. The Company informed the Union of this act and advised it that Sullivan was not to be dispatched to the Company again. Sullivan claims that the discharge was discriminatory in that other men had not been discharged for refusing job assignments, and that he was discharged because of his union activities.

The collective bargaining agreement covering Sullivan's employment with the Company provided in section IX(a) that the Company has the "right to reject unsatisfactory men, giving the reason therefor", and provided in section XI for summary dismissal of employees for stated causes. The agreement established procedures for review of discharges by the Company and the Union. It also contained a no strike clause. Section XI provided that a Joint Labor Relations Committee shall meet to review and settle, if possible, any case in which a dock worker has been dismissed. Under Section XIII, the Committee consisted of six representatives, with the Company and the Union each selecting three. If the Committee ruled that the dismissal was unjust, the dockworker was to be reinstated with back pay. If the Joint Labor Relations Committee failed to arrive at a settlement, either party could refer the matter to a Board of Conciliation which consisted of three persons. Both parties selected one member each, and the two members so selected appointed a third member. The majority decision of the Board was final and binding on the parties and could be retroactive. If the parties were unable to reach a decision, the agreement stated that the matter should be handled as set forth in the laws of the United States covering this subject.

At the Union's request, two meetings of the Joint Labor Relations Committee were held. Sullivan did not attend either meeting. The Committee did not rule that Sullivan had been unjustly dismissed. No one referred the dismissal to the Board of Conciliation, or resorted to the remedies of the Railway Labor Act.

Sullivan then brought this action against the Company in the District of Alaska for wrongfully discharging him in violation of the collective bargaining agreement between his union and the Company and in violation of the Railway Labor Act of May 20, 1926, c. 347, 44 Stat. 577, as amended 45 U.S.C. § 151 et seq. The district court granted a summary judgment in favor of the Company on the ground that Sullivan had not exhausted his administrative remedies as required by the law of Alaska, which controlled the action for wrongful discharge.

## I.

The Supreme Court has held that a discharged railway employee may either (1) pursue his remedy under the administrative procedures established by an applicable collective bargaining agreement, subject to the Railway Labor Act and a right of review before the National Railroad Adjustment Board, or (2) bring a common law action for damages if he accepts his discharge as final, and if the controlling state law recognizes such an action may be commenced without prior exhaustion of administrative remedies. Moore v. Illinois Cent. R.R., 312 U.S. 630, 61 S.Ct. 754, 85 L. Ed. 1089 (1941); Slocum v. Delaware L. & W. R. R., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795 (1950); Transcontinental & Western Airline, Inc. v. Koppal, 345 U.S. 653, 73 S.Ct. 906, 97 L.Ed. 1325 (1953). The major issue of this case is whether this court should refuse to follow these decisions in light of the Supreme Court's subsequent decisions in Republic

Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965), and Walker v. Southern Ry., 385 U.S. 196, 87 S.Ct. 365, 17 L.Ed.2d 294 (1966); specifically should we hold that a discharged employee, such as Sullivan, of a carrier that is subject to the Railway Labor Act is precluded by the Act from resorting to a state recognized cause of action for wrongful discharge without first exhausting his administrative remedies.[2]

In Moore v. Illinois Cent. R.R., *supra,* the Supreme Court, in 1941, held that a trainman was not required by the Railway Labor Act to exhaust his administrative remedies under the Act before bringing a suit for damages for wrongful discharge. The Court concluded that the language of 45 U.S.C.A. § 153 First (i), which provides that disputes may be referred to the Adjustment Board, indicated that the administrative remedy was not compulsory. In Slocum v. Delaware L. & W.R.R., *supra,* the Court, in 1950, held that under the Railway Labor Act, the Adjustment Board had exclusive jurisdiction over a jurisdictional dispute between two unions. *Moore* was distinguished as a case involving an employee who accepted his discharge as final and brought an action for damages for breach of contract. The Court in *Slocum* stated: "A common-law or statutory action for wrongful discharge differs from any remedy which the Board has power to provide, and does not involve questions of future relations between the railroad and its other employees." 339 U.S. at 244, 70 S.Ct. at 580. Transcontinental & Western Airline, Inc. v. Koppal, *supra,* in 1953, confirmed that a discharged airline employee, under provisions similar to the Railway Labor Act, could pursue his administrative remedy or could bring an action for unlawful discharge but only if the applicable state law recognized such a claim and allowed recovery without prior exhaustion of administrative remedies.

This was the law until, in 1965, Republic Steel Corp. v. Maddox, *supra,* held that contract grievance procedures voluntarily incorporated by the parties in collective bargaining agreements subject to the Labor Management Relations Act, unless specified by the parties to be non-exclusive, must be exhausted before direct legal redress may be sought by an employee.

*Maddox* involved a suit in a state court against an employer for severance pay under a contract subject to § 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a). The Court said, "Since [*Moore* and *Koppal*] the Court has made it clear that substantial federal law applies to suits on collective bargaining agreements covered by § 204 of the Railway Labor Act, International Assn. of Machinists v. Central Airlines, Inc., 372 U.S. 682, 83 S.Ct. 956, 10 L.Ed. 2d 67, and by § 301(a) of the LMRA, Textile Workers v. Lincoln Mills, 353 U. S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972." 379 U.S. at 655, 85 S.Ct. at 618.

The Supreme Court, in refusing to extend the rationale of *Moore, Slocum* and *Koppal* to Maddox's suit for severance pay on a collective bargaining agreement subject to the Labor Management Relations Act, raised doubts about the continued vitality of those cases in the area of the Railway Labor Act. First, federal jurisdiction in *Moore* and *Koppal* was based on diversity, and federal law was not thought applicable, even though the collective bargaining agreements were subject to the Railway Labor Act. Since those cases were decided, the Court noted, as quoted *supra,* that International Assn. of Machinists v. Central Airlines, Inc., *supra,* had made clear that substantive federal law applies to suits on collective bargaining agreements covered by § 204 of the Railway Labor Act. Second, the Court concluded that, even though a discharged employee accepted his discharge as final the resolution of

2. The question of whether the law of Alaska permits a suit without exhaustion of administrative remedies, if it is assumed that the Railway Labor Act does not preclude such a suit, is discussed in Part II.

his claim could have an effect on the future relations between his former employer and the remaining employees.

Despite the doubts raised about the vitality of *Moore* and its progeny by the analysis in *Maddox,* the Court in *Maddox* explicitly refused to overrule it:

> "By refusing to extend Moore v. Illinois Central R. Co. to § 301 suits, we do not mean to overrule it within the field of the Railway Labor Act. Consideration of such action should properly await a case presented under the Railway Labor Act in which the various distinctive features of the administrative remedies provided by that Act can be appraised in context, e. g., the make-up of the Adjustment Board, the scope of review from monetary awards, and the ability of the Board to give the same remedies as could be obtained by court suit." 379 U.S. at 657 n. 14, 85 S.Ct. at 619.

The Court's decision in *Maddox* raised such doubts about the continued vitality of *Moore* that Justice Black, dissenting in *Maddox,*[3] and two circuit courts[4] thought that future overruling of the *Moore* case certain.

Thereafter, in 1966, the Supreme Court decided Walker v. Southern Ry., *supra.* In *Walker* a railroad employee sued his employer, the Southern Ry Co., in a state court for wrongful discharge. The case was removed to the federal court on diversity grounds. The Supreme Court followed *Moore* and held that the discharged railroad employee need not exhaust his administrative remedies before bringing an action for wrongful discharge in cases *arising before* the enactment of Public Law 89–456, 80 Stat. 208, effective June 20, 1966, 45 U.S.C. § 153. The Court pointed out that the new procedures under P.L. 89–456 were not

available to Walker and his case was therefore governed by *Moore, Slocum* and *Koppal, supra,* 385 U.S. at 198–199, 87 S.Ct. 365.

The Court was persuaded not to overrule *Moore, Slocum* and *Koppal* because of the contrast between the administrative remedies available in *Walker* under the Railway Labor Act at the time he brought suit and those available in *Maddox.* The Court found the former remedies defective in several respects. First, lengthy delay was attendant upon exhaustion of administrative remedies under the Railway Labor Act as it applied to Walker. Second, although a railroad could obtain judicial review of a Board award in favor of an employee, an employee could not obtain review of an award in favor of a railroad.

In *Walker,* the Court noted that Congress enacted Public Law 89–456, 80 Stat. 208, effective June 20, 1966, to remedy defects in the operation of the National Railroad Adjustment Board's operation.

We do not resolve the problem of whether, in view of P.L. 89–456, the administrative remedies provided by the Railway Labor Act are now adequate when compared with the remedies available in *Maddox* because here administrative remedies were provided by the collective bargaining agreement and there was no recourse to the particular procedures specified in 45 U.S.C. § 153, as amended by Public Law 89–456.

The Railway Labor Act as amended, is replete with provisions indicating the desirability of settling all grievances without the necessity of employing the procedures of the Adjustment Boards. § 2 of the Act, 44 Stat. 577 as amended, 48 Stat. 1186, 45 U.S.C. § 151a provides that one of the purposes of the Act is

---

3. "The Court recognizes the relevance of *Moore* and *Koppal* and, while declining expressly to overrule them in this case, has raised the overruling axe so high that its falling is just about as certain as the changing of the seasons." Republic

Steel Corp. v. Maddox, *supra,* 379 U.S. at 667, 85 S.Ct. at 624.

4. Neal v. System Board of Adjustment (Missouri Pacific R. R.) (8 Cir. 1965) 348 F.2d 722; Walker v. Southern R. R. (4 Cir. 1965) 354 F.2d 950.

"to provide for the prompt and orderly settlement of all disputes growing out of grievances * * *." § 2, First of the Act, 44 Stat. 577 as amended 45 U.S.C. § 152 First, provides, "It shall be the duty of all carriers * * * and employees to exert every reasonable effort to make and maintain agreements * * * and to settle all disputes, whether arising out of the application of such agreements or otherwise * * *." § 2 Second, 45 U.S.C. § 152 Second, provides "all disputes between a carrier * * * and its * * * employees shall be considered, and, if possible, decided * * * in conference between representatives designated and authorized so to confer, respectively by the carrier * * * and by the employees * * *." § 2 Fourth, 45 U.S.C. § 152 Fourth, provides, "Employees shall have the right to organize and bargain collectively through representatives of their own choosing." § 2 Sixth, 45 U.S.C. § 152 Sixth, provides, "In case of a dispute * * * arising out of grievances * * * it shall be the duty of the designated representatives * * * to specify the time and place [for] such conference * * *." § 7 of the Act, 44 Stat. 582 as amended, 45 U.S.C. § 157, sets forth an elaborate system of arbitration; to be initiated by the parties, "[w]henever a controversy shall arise between a carrier * * * and its * * * employees which is not settled in conference between the representatives of the parties or by the appropriate adjustment board or through mediation * * *". § 7 First, 45 U.S.C. § 157 First.

Finally, § 3 Second of the Act, 44 Stat. 578 as amended, 48 Stat. 1189, and as further amended by Public Law 89–456, 45 U.S.C. § 153 Second, provides: "Nothing in this section shall be construed to prevent any individual carrier * * * and any class or classes of its * * * employees, all acting through their representatives, selected in accordance with provisions of this chapter, from mutually agreeing to the es-tablishment of system, group or regional boards of adjustment for the purpose of adjusting and deciding disputes of the character specified in this section."

The courts have repeatedly recognized that collective bargaining for the settlement of disputes should be engaged in by carriers and employees subject to the Railway Labor Act. In Virginian Ry. v. System Federation #40 etc., (1937) 300 U.S. 515, 548, 57 S.Ct. 592, 599–600, 81 L.Ed. 789, the Court said: "Both the statute and the decree are aimed at securing settlement of labor disputes by inducing collective bargaining with the true representative of the employees * * *". In California v. Taylor (1957) 353 U.S. 553, 567, 77 S.Ct. 1037, 1045, 1 L.Ed.2d 1034, the Court said: "It is by no means unreasonable to assume that Congress, aware of these characteristics of labor relations in the interconnected system which comprises our national railroad industry, intended that collective bargaining, as fostered and protected by the Railway Labor Act, should apply to all railroads." In Itasca Lodge No. 2029 v. Railway Express Agency Inc., (8 Cir. 1968) 391 F.2d 657, 662, the Court said: "The Act as a whole contemplates, encourages and commands that the parties attempt to settle all 'minor disputes,' first through their grievance procedure * * *".

Thus the Railway Labor Act contemplates the use of conferences and grievance procedures between representatives of the employees and the carrier. In our case, the representatives of the employees initiated grievance procedures under the collective bargaining agreement, but the procedures were not exhausted. The matter did not go to the Adjustment Board referred to in the Act. Sullivan exhausted neither his remedies under the collective bargaining agreement nor the remedies under the Act.

It is arguable that, to meet the suggestions of *Walker* and make a com-

plete and adequate procedure giving rise to an exhaustion of remedies rule, the amendments to the administrative procedure provided by P.L. 89–456 were required. We are, however, of the view that since Sullivan did not exhaust his remedies under the collective bargaining agreement, he was precluded by the Railway Labor Act from bringing an action at law for wrongful discharge because the agreement provided a means for arbitration and settlement of disputes adequate to protect the employees' interests. We do not think that it is dispositive that the procedures were to be carried on under the agreement rather than under 45 U.S.C. § 153, as amended by P.L. 89–456. The purpose of P.L. 89–456 was to remedy existing defects in adjustment proceedings under the Railway Labor Act, not to supplant collective bargaining agreements then in existence that provided adequate remedies for resolving disputes.

Republic Steel Corp. v. Maddox, *supra*, 379 U.S. at 657, 659, 85 S.Ct. at 619, noted, "The federal rule would not of course preclude Maddox' court suit if the parties to the collective bargaining agreement expressly agreed that arbitration was not the exclusive remedy." But any doubts that individual employees are free to avoid the contract procedure in favor of a judicial suit "must be resolved against such an interpretation." A reading of the collective bargaining agreement in the case at bar, summarized above, shows no agreement, express or otherwise, that arbitration was not the exclusive remedy.

We do not, therefore, decide the question of whether P.L. 89–456 corrected the deficiencies in the administrative remedy under the Act. We have, however, examined the amendments and believe that they cure the defects pointed out in legal literature and referred to in *Walker*.[5]

5. There is little authority on the effect of P.L. 89–456, in curing the previous deficiencies in the Act. All but one of the cases decided after *Walker* in which railroad employees have brought suit for wrongful discharge have involved discharges *before* the effective date of Public Law 89–456. The courts have, of course, followed *Walker*. Grubbs v. Pennsylvania R. R. (6 Cir. 1970) 427 F.2d 138; Ferguson v. Seaboard Air Line R. R. (5 Cir. 1968) 400 F.2d 473; Belanger v. New York Cent. R. R. (6 Cir. 1967) 384 F.2d 35; Pacilio v. Pennsylvania R. R. (2 Cir. 1967) 381 F.2d 570; Cymny v. South Buffalo Ry. (1970) 62 Misc.2d 320, 308 N.Y.S.2d 709; Florida E. Coast Ry. v. Hill (Fla.D.C.A.1970) 233 So.2d 845. The one case involving a discharge to which Public Law 89–456 was applicable followed *Moore* without an analysis of the new legislation even though the district court read that case as implying that a contrary result should be reached if Public Law 89–456 corrected the deficiencies in the Adjustment Board's operation. Cales v. Chesapeake & O. Ry. (W.D.Va.1969) 300 F.Supp. 155. *See* Cales v. Chesapeake & O. Ry. (W.D.Va. 1969) 46 F.R.D. 36, indicating that the case arose subsequent to the effective date of Public Law 89–456. Other cases, in dictum, have similarly observed that

*Walker* implied that a different result would have been reached had Public Law 89–456 been applicable and cured defects in the administrative remedy. Slagley v. Illinois Cent. R. R. (7 Cir. 1968) 397 F.2d 546, 549 n. 3; Stumo v. United Air Lines, Inc. (7 Cir. 1967) 382 F.2d 780, 785; Clemens v. Central R. R. (E.D.Pa. 1967) 264 F.Supp. 551, 560 n. 3.

The purpose of Public Law 89–456 was to correct the procedural inadequacies in the operation of the Adjustment Board that were noted in *Walker*.

"The principal purpose of the bill is to eliminate the large backlog of undecided claims of railroad employees pending before the National Railroad Adjustment Board, to expedite disposition of grievances and disputes over the interpretation and application of agreements, and to provide equal opportunity for limited judicial review of awards of the Board to employees and employers." 1966 U.S.Code Cong. and Admin.News, pp. 2285, 2286.

We believe that Public Law 89–456 effectively corrected the defects. It amended the Act, 45 U.S.C.A. § 153 First (m), to provide that awards of Adjustment Boards shall be final and binding, deleting the words "except insofar as they shall contain a money award", which in its operation had allowed carriers but not

We conclude that *Moore, Slocum* and *Koppal* are no longer controlling as to allowing a railway worker to initially file a court action, without first exhausting his administrative remedies.

## II.

Even if we were unable to conclude that *Moore,* and it progency are no longer valid authority, we would affirm the judgment of the district court. As Transcontinental & Western Airline, Inc. v. Koppal, *supra,* held, a discharged employee of a carrier subject to the Railway Labor Act had to show that he had exhausted his administrative remedies if the applicable state law required him to before resorting to a state recognized cause of action for wrongful discharge. The district court concluded that the law of Alaska recognizes the rule of exhaustion of administrative remedies and granted the summary judgment against Sullivan. We agree.

The district court relied on a territorial case, Fidalgo Island Packing Co. v. Phillips (D.Alaska 1954) 120 F.Supp. 777, 15 Alaska 15, aff'd per curiam (9 Cir. 1955) 230 F.2d 638, 16 Alaska 12, cert. den. (1956) 352 U.S. 944, 77 S.Ct. 262, 1 L.Ed.2d 237, 16 Alaska 561. See also, Born v. Cease (D.Alaska 1951) 101 F.Supp. 473, 13 Alaska 518. The district court also noted that exhaustion of administrative remedies is the rule of most states.

Sullivan argues that the territorial cases are distinguishable and that there are no state cases accepting the doctrine of exhaustion of administrative remedies as a general proposition, much less applying it to his particular kind of case. The Company concedes that there are no state cases on point but argues that it is probable that the Alaska Supreme Court will follow the general rule of the territorial cases. The district

employees to obtain judicial review of unfavorable Adjustment Board decisions. It further amended the Act, 45 U.S.C. § 153 First (p) and (q) to provide equal opportunities to carriers and employees to obtain judicial review of Adjustment Board awards.

Public Law 89–456 also amended the Act, 45 U.S.C. § 153 Second, by providing for the creation, at the request of carriers or employees' representatives, of special boards of adjustment to resolve disputes otherwise referrable to the Adjustment Board. The awards of special boards are enforced in the same manner as awards of the Adjustment Board. The creation of special boards, we believe, gives the parties subject to the Railway Labor Act an opportunity to expedite the processing of grievances comparable to that available in *Maddox* under a collective bargaining agreement subject to the Labor Management Relations Act.

The provision in Public Law 89–456 for the creation of special adjustment boards, 45 U.S.C. § 153 Second, also eliminates a distinction suggested in *Maddox* between the administrative remedy available in that case and the remedy available under the Railway Labor Act. In *Maddox*, the Court indicated that it would take a look at the make-up of the Adjustment Board before deciding whether to overrule *Moore.* 379 U.S. 650, 657 n. 14. Writers have

suggested that because of the Adjustment Board's make-up it is ill-suited to adequately protect the interests of individuals with claims before it. Note, 52 Va.L.Rev. 717 (1966). Public Law 89–456 gives the employer and the employees' representative the alternative of proceeding before special adjustment boards, which will not, in our opinion suffer from the same arguable defect. Special adjustment boards will initially be composed of two members. One member is appointed by each party to the dispute. If the initial two members are unable to agree upon an award, they select a neutral third member. If they are unable to agree on a third member, one of them can request the Mediation Board to appoint the neutral member. A tribunal so composed will adequately protect the individual employee's interests. The Court in *Maddox* mentioned another aspect of the administrative remedy under the Railway Labor Act relevant in determining its adequacy, viz the ability of the Adjustment Board to grant the same relief that could be obtained in a court. This factor does not require us to find the administrative remedy under the Railway Labor Act inadequate. Our attention has not been called to any authority indicating that the tribunals under the Act were unable to *grant* the same relief to a discharged employee that courts were able to grant.

court agreed with the latter argument. Sullivan contends that basing the decision on such a predication was improper.

The district court, in the absence of state authority on point, properly attempted to predict state law.

"The duty of a federal court exercising diversity jurisdiction, when the state tribunals have not supplied an answer to the direct problem involved, is to apply the rule which it believes would be applied by the highest court of the state if the specific question should be presented to it. Fidelity Union Trust Co. v. Field, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109 (1940)." Owens v. White (9 Cir. 1967) 380 F. 2d 310, 313.

To the same effect, Insurance Company of North America v. Thompson (9 Cir. 1967) 381 F.2d 677, 681.

In performing its function as described above, the district court properly considered the territorial case. "The fact that Alaska was a territory, rather than a state, when the holding was made should not diminish the respect which we should accord to an Alaska court's interpretation of Alaska's law in this diversity case." Turnbull v. Bonkowski (9 Cir. 1969) 419 F.2d 104, 106.

Finally, we cannot conclude that the district court erred in its finding on the law of Alaska.

"[W]e are influenced by the deference which we should accord to the conclusion of the district judge as to the law of the state wherein he sits. * * * 'This requirement is especially significant where there has been, as here, no clear exposition of the controlling principle by the highest court of the particular state.'" 419 F.2d at 106 (citations omitted).

The court concluded that the district court's determination will be accepted on review unless shown to be clearly wrong.

Sullivan has not demonstrated that the view of the district court of the law of Alaska was clearly wrong.

The judgment is affirmed.