Lana Glenell TRANSUE,
Plaintiff–Appellant,

v.

AESTHETECH CORP, Defendant,

and

Bristol–Myers Squibb Company, a Delaware corp; Medical Engineering, a Delaware corp,

Surgitek, MEC Subsidiary Corp, a Wisconsin corp individually and as successor in interest to Surgitek Inc dba Surgitak, Mec Subsidiary Corp, Defendants–Appellees.

No. 01–35733.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 10, 2003.

Filed Aug. 27, 2003.

Don Howarth, Los Angeles, California, for plaintiff-appellant and cross-appellee.

Suzelle M. Smith, Los Angeles, California, for plaintiff-appellant and cross-appellee.

Frederick D. Baker, San Francisco, California, for defendants-appellees and cross-appellants.

Michael F. Healy, San Francisco, California, for defendants-appellees and cross-appellants.

Before D.W. NELSON and THOMAS, Circuit Judges, PREGERSON,* District Judge.

PREGERSON, District Judge.

Plaintiff–Appellant Lana Transue ("Transue") appeals the district court's decision not to give jury instructions on strict liability in her suit against Defendants–Appellees Bristol–Myers Squibb Company and Medical Engineering Corporation, Inc. alleging a defective breast implant. The district court instead gave instructions on negligence, and the jury found for appellee. Transue also appeals three evidentia-

* The Honorable Dean D. Pregerson, United States District Judge for the Central District of California, sitting by designation.

ry rulings, claiming it was reversible error for the district court to allow the appellee's expert to testify about spoliation of evidence, to refuse to allow her two rebuttal witnesses to testify, and to refuse to permit her to cross-examine appellee's expert witness using learned treatises. Because we find the jury instructions to be reversible error, we do not reach the district court's evidentiary rulings.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1985, Transue received silicone-gel filled breast implants manufactured by Medical Engineering Corporation, Inc., a wholly-owned subsidiary of Bristol–Myers Squibb Company (collectively, "BMS"). The implantation was performed by Dr. Hobart J. White of Tacoma, Washington. Transue alleges that the implants ruptured inside of her body, causing tissue death, scarring, pain, and permanent silicone contamination of her body. In contrast, BMS alleges that Transue had experienced, due to a possible fibrocystic disease, pain in her breasts beginning in the early 1980s, before the implantation. Further, BMS states that in 1993 Transue consulted Dr. Schaerfle, a local plastic surgeon, who told her there was no reason to suspect the implants were broken. Next, BMS states that six months later Transue saw another plastic surgeon, Dr. Sowder, who reached the same conclusion. Two months after that, BMS claims, a third plastic surgeon found no evidence of any rupture. BMS further claims that a 1993 mammogram, a 1994 ultrasound, the opinion of the only plastic surgeon who testified at trial, Dr. Stevens, and a 1995 xerogram all indicate that the implants did not rupture while inside Transue's body. In 1995, Transue underwent explant surgery to remove the implants and replaced them with saline implants, which she currently uses. Transue alleges that her injuries are permanent and that she will have to undergo periodic implant and explant surgery for her lifetime.

On October 18, 1994, Transue filed suit against BMS in state court in Seattle, Washington, seeking damages caused by the allegedly defective breast implant devices. BMS removed the case to federal court in the Western District of Washington. The case then was transferred to federal court in the Northern District of Alabama to be included in the breast implant multi-district litigation ("MDL"). The individual cases were stayed pending a comprehensive uniform discovery program, and settlement negotiations were ongoing simultaneously. Unhappy with the low settlement offers, Transue opted out of the MDL, and this case was remanded back to the Western District of Washington. BMS filed a Motion for Summary Judgment or in the Alternative for Summary Adjudication. The district court granted BMS summary judgment as to all of Transue's claims except her claims under the Washington Product Liability Act ("WPLA") (Wash. Rev.Code § 7.72 (2001)). The district court also disallowed Transue's claim for punitive damages.

Transue's remaining claims, after summary judgment, arise under the WPLA, which consolidated the previously used common law theories of product liability. Specifically, the surviving claims were the standard product liability claims, alleging manufacturing defects, design defects, and a failure to adequately warn, as well as a claim alleging that BMS breached express and implied warranties. In the Joint Pretrial Order, BMS responded to Transue's claims by denying that its products were defective in design, manufacture, or warning, and denying that it breached any warranty or made any misrepresentation regarding the implants. Further, BMS asserted the learned intermediary doctrine as an affirmative defense, and also

asserted the defense that Transue assumed the risk of the injuries she alleges and/or that others contributed to causing her injuries, and therefore, that the fault should be distributed proportionally.

After a ten-day jury trial, the jury returned a verdict for the defendants on all of Transue's claims. Instructed on negligence, and not strict liability, the jury found that (1) BMS manufactured Transue's breast implants; (2) BMS did not fail to use ordinary care in designing the implants; (3) BMS did not fail to use ordinary care in manufacturing the implants; and (4) BMS did not fail to use ordinary care in issuing warnings or instructions. Transue filed post-trial motions for judgment as a matter law and for a new trial, both of which were denied. Transue filed a timely notice of appeal.

## STANDARD OF REVIEW

■ "If jury instructions are challenged as a misstatement of the law, they are reviewed de novo." *Voohries–Larson v. Cessna Aircraft Co.*, 241 F.3d 707, 713 (9th Cir.2001); *City of Long Beach v. Standard Oil Co. of Cal.*, 46 F.3d 929, 933 (9th Cir.1995). However, an error does not require reversal if it is harmless. *See, e.g., Caballero v. City of Concord*, 956 F.2d 204, 206 (9th Cir.1992) ("An error in instructing the jury in a civil case requires reversal unless the error is more probably than not harmless.").

## DISCUSSION

I. *The district court should have instructed on strict liability with respect to the appellant's manufacturing defect claim.*

■ Transue contends that the district court committed reversible error by failing to issue strict liability jury instructions, and instead issuing negligence jury instructions with regard to the manufacturing and design defect claims. BMS contends that comment *k* to the Restatement (Second) of Torts, § 402A governs manufacturing and design defect claims in this case, and exempts from strict liability medical devices, such as breast implants, that are available only through a prescribing physician.

Section 402A of the Restatement (Second) of Torts pertains to unreasonably dangerous products. The text of comment *k* reads:

> *k. Unavoidably unsafe products.* There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs. An outstanding example is the vaccine for the Pasteur treatment of rabies, which not uncommonly leads to very serious and damaging consequences when it is injected. Since the disease itself invariably leads to a dreadful death, both the marketing and the use of the vaccine are fully justified, notwithstanding the unavoidable high degree of risk which they involve. Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it unreasonably dangerous. The same is true of many other drugs, vaccines, and the like, many of which for this very reason cannot legally be sold except to physicians, or under the prescription of a physician. It is also true in particular of many new or experimental drugs as to which, because of lack of time and opportunity for sufficient medical experience, there can be no assurance of safety, or perhaps even of purity of ingredients, but such experience as there is justifies the marketing and use of the drug notwithstanding a medically recognizable risk. The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for

it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk.

Rest. (2d) Torts § 402A (1965) comment *k.*

Transue argues that BMS "lead[s] the trial court into error by arguing that comment k completely eviscerates strict liability in any medical device case, which it does not." Transue implies that comment *k* no longer applies in Washington subsequent to the adoption of the WPLA. Beyond that, Transue claims that comment *k* does not grant "even all manufacturers of prescription drugs or prescription products a blanket exception to strict liability." Further, Transue contends that the comment *k* exemption to strict liability "does *not* include claims of manufacturing defects for drugs, which are still governed by strict liability." Transue essentially argues that comment *k* does not apply to breast implant devices, and, even if it does, it does not provide blanket immunity from strict liability, but only exempts design defect claims. Transue states that the district court "did not give Plaintiff a chance to prove her manufacturing defect claim under the correct law," which is strict liability, and that the negligence instruction misdirected the jury.

Given the conclusion that comment *k* mandates different jury instructions with respect to design and manufacturing defect claims, the discussion below evaluates comment *k* in the context of different product liability theories.

A. *Under Washington law, comment* k *affords a blanket exemption from strict liability for design defects in medical devices or products.*

■ BMS argues that established Washington case law holds that comment *k* governs this case because breast implants, as medical devices available only through a physician, fall within the ambit of comment *k.* BMS argues that comment *k* provides a blanket exemption from strict liability for design defect claims on all prescription medical products.

Despite Transue's argument to the contrary, "[t]here is no debate" that Washington courts have expressly adopted the comment *k* exception to strict liability in the case of unavoidably unsafe products. *Ruiz–Guzman v. Amvac Chem. Corp.,* 141 Wash.2d 493, 7 P.3d 795, 801–02 (2000) (en banc) (citing *Terhune v. A.H. Robins Co.,* 90 Wash.2d 9, 577 P.2d 975, 977 (1978) (en banc)). Moreover, as discussed below, the Washington Supreme Court has indicated that comment *k* provides an exemption for medical products generally.

The Washington Supreme Court treated the issue in three cases leading up to its recent opinion in *Ruiz–Guzman.* First, in *Terhune v. A.H. Robins Co.,* the court found that the Dalkon Shield implanted contraceptive device qualified for comment *k* exemption because of its availability only through a physician. 90 Wash.2d 9, 577 P.2d 975, 977–79 (1978). Second, in *Rogers v. Miles Laboratories, Inc.,* the court held that blood and blood products qualify for comment *k* exemption. 116 Wash.2d 195, 802 P.2d 1346, 1351 (1991) (en banc). Third, a plurality of the court in *Young v. Key Pharmaceuticals, Inc.,* held that "a separate determination of whether a product is unavoidably unsafe need not be made on a case-by-case basis if that product is a prescription drug." 130 Wash.2d 160, 922 P.2d 59, 64 (1996) (en banc). Finally, in its recent opinion in *Ruiz–Guzman,* the court held that "[b]y its own terms, comment *k* is especially applicable to medical products. The exceptions for medical products recognize the unique protection provided to the consumers of such

products by the prescribing physician (and/ or pharmacist) intermediary." 7 P.3d at 803. The court held that a "product-by-product" determination is to be made with regard to whether pesticides are governed by comment *k*, "as opposed to a *blanket exemption* like that for medical products." *Id.* at 804 (emphasis added).[1]

While this statement in *Ruiz–Guzman* appears to be dicta, the Washington Supreme Court expressed its belief that all medical products receive blanket comment *k* exemption. In such circumstances, " '[t]he duty of a federal court exercising diversity jurisdiction, when the state tribunals have not supplied an answer to the direct problem involved, is to apply the rule which it believes would be applied by the highest court of the state if the specific question should be presented to it.' " *Sullivan v. Pac. & Arctic Ry. & Navigation Co.*, 439 F.2d 267, 274 (9th Cir.1971) (quoting *Owens v. White*, 380 F.2d 310, 313 (9th Cir.1967)). Accordingly, if the Washington Supreme Court were to encounter this precise issue, the most reasonable inference from existing precedents is that it would likely follow its dicta in *Ruiz–Guzman* and hold that all medical devices and products will be afforded comment *k* exemption.[2]

█ It appears that the issue of whether a breast implant, specifically, is a "medical device or product" that is unavoidably unsafe and therefore receives comment *k* exemption has not been directly addressed by Washington courts. However, breast implants fall within the rationale of *Ruiz–Guzman* for providing comment *k* immunity for medical devices and products. 7 P.3d at 802–03. This rationale emphasizes the presence of physicians as intermediaries between manufacturers and consumers, and recognizes that "[a] physician possesses the medical training to assess adverse health effects of a medical product and to tailor that assessment to a particular patient." *Id.* at 803. The Washington Supreme Court provided intimations of this rationale in *Terhune:* "It is [the physi-

---

1. It is important to note the meaning and usage of the term "blanket exemption." BMS uses the term in two ways: First, to argue that all medical devices and products are exempted from strict liability by virtue of comment *k;* and second, to argue that the exemption is "blanket" with respect to a manufacturing defect, a design defect, and a failure to adequately warn, and that there is no strict liability claim for any of these three categories in the case of a medical device or product. However, *Ruiz–Guzman* and cases from foreign jurisdictions, such as *Artiglio v. Superior Court* in California, support only BMS's first contention above. *See Artiglio v. Superior Court*, 22 Cal.App.4th 1388, 1396, 27 Cal. Rptr.2d 589 (1994) (affirming that the "blanket exemption" set forth in *Brown v. Superior Court*, 44 Cal.3d 1049, 245 Cal.Rptr. 412, 751 P.2d 470 (1988), referred to protection of "an entire category of procedures," not an elimination of strict liability with respect to all three components of the traditional products liability claim). Again, while all medical devices or products are unavoidably unsafe, and

therefore receive "blanket exemption," this exemption applies *only* to the design defect claim of the traditional three-category products liability claim, as discussed more fully below.

2. Note that this blanket comment *k* exemption for medical products is not found in all states. Rather, it appears there is a split in the jurisdictions, and that the rules in Washington, California, and Utah are in the minority. *See, e.g., Brown v. Superior Court*, 44 Cal.3d 1049, 245 Cal.Rptr. 412, 751 P.2d 470 (1988); *Grundberg v. Upjohn Co.*, 813 P.2d 89 (Utah 1991); *Young*, 130 Wash.2d 160, 922 P.2d 59. The majority view, the case-by-case, product-by-product analysis, has been adopted in several other states. *See, e.g., Tobin v. Astra Pharm. Prods., Inc.*, 993 F.2d 528 (6th Cir. 1993); *Hill v. Searle Labs.*, 884 F.2d 1064 (8th Cir.1989); *Castrignano v. E.R. Squibb & Sons, Inc.*, 546 A.2d 775 (R.I.1988); *Toner v. Lederle Labs.*, 112 Idaho 328, 732 P.2d 297 (1987); *Feldman v. Lederle Labs.*, 97 N.J. 429, 479 A.2d 374 (1984).

cian's] duty to inform himself of the qualities and characteristics of those products which he prescribes ... and to exercise an independent judgment, taking into account his knowledge of the patient as well as the product." 577 P.2d at 978. It is on this rationale that the *Ruiz–Guzman* court distinguished the applicability of comment *k* to pesticides from medical products. The *Ruiz–Guzman* court held that, for pesticides, the determination of whether the product is "necessary regardless of the risks" is done on a product-by-product basis. 7 P.3d at 803–04 (quotation marks and citation omitted).

The California appellate courts have addressed the issue more directly and concluded that breast implants, along with other implanted medical products or devices, are within the ambit of comment *k*. *See, e.g., Artiglio,* 22 Cal.App.4th at 1395, 27 Cal.Rptr.2d 589 (holding that the rule of *Brown* immunizing manufacturers of prescription drugs and penile implants from strict liability for design defects "applies equally to breast implants. Just as drugs are injected or ingested into the body, a breast implant, as a penile prosthesis, is 'plugged in' to the individual."); *see also Hufft v. Horowitz,* 4 Cal.App.4th 8, 19–20, 5 Cal.Rptr.2d 377 (1992) (analogizing implanted medical devices to prescription drugs, as opposed to products such as wheelchairs, and concluding by "draw[ing] a bright line within which the comment k test is applied to all implanted medical devices."); *Plenger v. Alza Corp.,* 11 Cal. App.4th 349, 360–61, 13 Cal.Rptr.2d 811 (1992) (applying comment *k* to an intrauterine device).[3]

---

**3.** Some federal circuits, including the Ninth Circuit, have also treated implanted medical products and devices as falling under the comment *k* exemption. *See, e.g., Coursen v. A.H. Robins Co.,* 764 F.2d 1329, 1337 (9th

**B.** *Comment* k *does not permit a negligence instruction with respect to a manufacturing defect claim.*

*Despite the conclusion above that comment* k *applies to breast implants, comment* k *should not be construed to provide protection for manufacturing defect claims based on unavoidably unsafe products.* For the purposes of manufacturing defects, the relevant portion of comment *k* states: "Such a product, *properly prepared,* and accompanied by proper directions and warning, is not defective, nor is it unreasonably dangerous.... The seller of such products, again with the qualification that they are *properly prepared* and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability...." Rest. (2d) Torts § 402A, comment *k* (emphasis added). At trial, Transue argued that the proper standard for a manufacturing defect, even under comment *k,* is strict liability. The district court, however, read the word "properly," italicized above, to indicate that a negligence standard is appropriate. The following exchange occurred during the discussion of jury instructions:

> MS. SMITH [appellant's counsel]: ... If the product itself, if there's is [sic] evidence in the record that the product itself was manufactured defectively, as we have in this case, then the strict liability causes of action do come into play.... [*Terhune v. A.H. Robins Co.,* 90 Wash.2d 9, 577 P.2d 975 (1978) ] says specifically we are holding negligence under failure to warn standard and we— I can't remember their word, but we underline or underscore that the product must be flawlessly made....

---

Cir.1985) (applying comment *k* to case involving an intrauterine device); *Brooks v. Medtronic, Inc.,* 750 F.2d 1227, 1230–31 (4th Cir. 1984) (applying comment *k* to case involving a cardiac pacemaker).

THE COURT: I think it says—didn't say flawlessly.

MS. SMITH: No, it doesn't.

THE COURT: It says properly. And that to me sounds like a negligence standard.

The district court repeated this conclusion in its order denying the plaintiff's motion for a new trial. Without citation to authority, the district court found that, under comment *k*, "the manufacturer can be held liable for defects in design, manufacturing, and warning only if negligence is proven."

In commenting on the district court's conclusion, BMS states:

> The district court was right. The cases and comment k do say "properly prepared," and it is a negligence standard. To say a product was "properly prepared" is to say it was made with "proper care." As this Court has said, "proper care" is analogous to "due care" and "reasonable care under the circumstances"—that is, the standard for negligence.

BMS does not cite any authority for its crucial statement, "To say a product was 'properly prepared' is to say it was made with 'proper care.'"

■ Indeed, a number of authorities from other jurisdictions persuasively indicate that such a jump is not warranted and that, in fact, comment *k* is not intended to apply a negligence standard to manufacturing defect claims in the context of unavoidably unsafe products. *See Morris v. Parke, Davis & Co.,* 667 F.Supp. 1332, 1336 (C.D.Cal.1987) ("Comment k's protection is expressly conditioned by the requirement that the drug be 'properly prepared and marketed'; i.e., that it not have a manufacturing defect. A drug that has a manufacturing defect is, by definition, not 'unavoidably unsafe.'"); *Patten v. Lederle Labs.,* 676 F.Supp. 233, 236 (D.Utah 1987) ("By its terms comment k excepts unavoid-

ably unsafe products from strict liability only to the extent plaintiff alleges a design defect; comment k's immunity from strict liability does not extend to strict liability claims based on some manufacturing flaw or on inadequacy of warning."); *Kearl v. Lederle Labs.,* 172 Cal.App.3d 812, 817, 831, 218 Cal.Rptr. 453 (1985) (in a case involving comment *k,* the court wrote: "Furthermore, we will explain that although unavoidably dangerous products—like all other products—are subject to strict liability for *manufacturing defects,* such products are subject merely to negligence liability for *warning defects.* . . . Even if the OPV in this case had been properly determined to be an unavoidably dangerous product, however, such a finding would not have precluded plaintiff from prosecuting her case on the theory of strict products liability for manufacturing defects." (footnote omitted)), *disapproved of on other grounds, Brown,* 44 Cal.3d at 1068–69, 245 Cal.Rptr. 412, 751 P.2d 470; *Adams v. G.D. Searle & Co., Inc.,* 576 So.2d 728, 732 n. 4 (Fla.App.1991) ("Comment k protects manufacturers from strict liability only for design defects. An injured party may seek strict liability for manufacturing defects or inadequate warnings even though comment k applies."); *Tansy v. Dacomed Corp.,* 890 P.2d 881, 886 (Okla.1994) ("The Comment k defense does not apply when the product is defective due to faulty manufacturing or inadequate warnings."); *Castrignano,* 546 A.2d at 780 ("We conclude that this exemption [comment *k* ] applies only to allegations of a defective design."). As the Idaho Supreme Court wrote:

> By its terms, comment k excepts unavoidably unsafe products from strict liability only where the plaintiff alleges a design defect, and not where the plaintiff alleges a manufacturing flaw or an inadequate warning. Comment k intends to shield from strict liability prod-

ucts which cannot be designed more safely; however, if such products are mismanufactured or unaccompanied by adequate warnings, then the seller may be liable even if the plaintiff cannot establish the seller's negligence. Courts and commentators universally agree to this limitation on comment k's grant of immunity from strict liability.

*Toner v. Lederle Labs., a Div. of Am. Cyanamid Co.,* 112 Idaho 328, 732 P.2d 297, 305 (1987) (footnote omitted). The point was reiterated recently by a California court in the context of a breast implant case. The *Artiglio* court explained *Brown* as holding that:

> Liability for defective design [of prescription drugs] could not be premised on strict liability, but would require proof of negligence. Strict liability would continue applicable for manufacturing defects; and liability for failure to warn of known or reasonably knowable risks in the use of the product remains viable "under general principles of negligence."

*Artiglio,* 22 Cal.App.4th at 1393, 27 Cal. Rptr.2d 589 (citations omitted).

This understanding of comment k is further supported by commentary in the Restatement (Third) of Torts: Product Liability, discussing a section analogous to § 402A of the Restatement (Second) of Torts. "Limitations on the liability for prescription drug and medical-device designs do not support treating drug and medical-device manufacturers differently from commercial sellers of other products with respect to manufacturing defects. Courts have traditionally subjected manufacturers of prescription products to liability for harm caused by manufacturing defects." Rest. (3d) Torts: Prod. Liab. § 6 (1998) comment c.

■ BMS cites *Rogers v. Miles Laboratories, Inc.,* 116 Wash.2d 195, 802 P.2d 1346 (1991) (en banc) in support of its argument that, under Washington law, comment k immunizes a manufacturer from strict liability on a manufacturing defect claim. However, a review of *Rogers* reveals that it was not a manufacturing defect case as there was apparently no allegation that the blood products at issue were improperly produced. *Cf. Wiseman v. Goodyear Tire & Rubber Co.,* 29 Wash. App. 883, 631 P.2d 976, 978 (1981) (explaining that manufacturing defects involve the improper assembly of an individual product); *Seattle–First Nat'l Bank v. Tabert,* 86 Wash.2d 145, 542 P.2d 774, 776 (1975) (en banc) (noting that manufacturing defects involve "a defect in the manufacturing process"); *see also Rogers,* 802 P.2d at 1352 (holding that comment k should apply where the blood product "contained a then unknown and unknowable infectious agent undetectable by any available scientific test." (citing *Miles Labs., Inc. v. Doe,* 315 Md. 704, 556 A.2d 1107, 1121 (1989))).

Therefore, the district court erred in denying Transue's request that a strict liability jury instruction be given with respect to her claim alleging a manufacturing defect.

II. *BMS has not shown that a manufacturing defect instruction was unsupported by the evidence.*

BMS argues that, even if Washington law recognizes strict liability for manufacturing defects where comment k applies, the plaintiff did not present sufficient evidence to entitle her to a manufacturing defect instruction. BMS contends that "Transue has been obtuse in explaining precisely what it is she contends constitutes a manufacturing defect" and that, moreover, "the record is utterly devoid of any evidence whatever causally linking the purported defect with any injury allegedly sustained by Transue." [4]

4. BMS also argues that the jury implicitly

found that the implants did not rupture prior

The district court issued jury instructions covering Transue's manufacturing defect claim. While the district court noted that BMS was challenging the appellant's contention that a manufacturing defect existed and the appellant's theory of causation, there was no indication by the district court that there was insufficient evidence to support a jury instruction on the alleged manufacturing defect. It seems reasonable that, if the district court so thought, it would have articulated this belief during the discussion of jury instructions, in which the plaintiff clearly argued that a separate instruction should be given for her manufacturing defect claim. Instead, the district court indicated that the manufacturing defect instruction was simply to employ the same standard as the design defect instruction.[5] The district court gave these manufacturing defect instructions: Jury Instruction No. 11: "Plaintiff claims that defendants were negligent ... by failing to use ordinary care in the manufacturing of plaintiff's implants....."; Jury Instruction No. 14: "With regard to plaintiff's claim that the manufacturer was negligent in designing and/or manufacturing her breast implants, the plaintiff has the burden of proving each of the following propositions...."

■ We review a district court's formulation of civil jury instructions for abuse of discretion. *Monroe v. City of Phoenix,* 248 F.3d 851, 857 (9th Cir.2001). BMS fails to provide any support in the record for its contention that the district court abused its discretion when it determined that the instant jury instructions were warranted. Because circumstantial evidence may be a sufficient basis for instructing a jury, *see Longenecker v. General Motors Corp.,* 594 F.2d 1283, 1287 (9th Cir.1979), we are satisfied that BMS has failed to demonstrate that the error relating to the manufacturing defect instruction was more probably than not harmless.

III. *The appellant's alleged spoliation does not bar her manufacturing defect claim.*

■ BMS asserts that the district court's error was harmless for an additional reason; BMS argues that Transue's alleged spoliation of evidence should bar her manufacturing defect claim. Specifically, BMS claims that post-explantation, the implants were mangled by Dr. Wood, Transue's treating doctor, then destroyed by Dr. Blais, Transue's expert. BMS claims it was given no notice and no opportunity to view the explantation surgery or to insist that a video of the surgery be made. The district court considered this argument and decided against barring the plaintiff's claims in favor of providing a spoliation instruction to the jury. In its order denying BMS's renewed motion for judgment as a matter of law, the district court stated that "The Court remains greatly concerned with plaintiff's cavalier treatment of evidence in this case." However, the district court stated that it was "satisfied that the spoliation instruction, which allowed the jury to infer that the breast implants were not ruptured prior to the explant procedure, was sufficient to remedy the prejudice plaintiff's actions caused defendants."

---

to removal, and therefore a manufacturing defect could not conceivably have injured the plaintiff. As the plaintiff points out, however, because the jury was instructed on a negligence standard, the verdict does not necessarily equate to a finding that rupture did not occur prior to removal, only that due care was exercised.

**5.** "The Court: But, I mean, I'm basically instructing on negligent design and negligent manufacture.... [I]nstruction number 11 reads now ... negligence regarding design and manufacture."

The imposition of discovery sanctions is reviewed for abuse of discretion. *Yeti By Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1105 (9th Cir.2001); *see also Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir.1993) ("A federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence."). Under this standard, the district court's decision to issue a spoliation instruction instead of barring Transue's manufacturing defect claim was appropriate. Therefore, BMS has not shown that the error relating to the manufacturing defect instruction was more probably than not harmless.

## CONCLUSION

Based on the erroneous jury instructions given by the district court, the case is reversed and remanded.

**REVERSED and REMANDED.**