### Michael David DOWLAND, Plaintiff and Appellant,

v.

### LYMAN PRODUCTS FOR SHOOTERS, a corporation, Euroarms, The Leisure Group, Inc., and ABC corporations 1 through 10, Defendants and Respondents.

### No. 17323.

### Supreme Court of Utah.

### Feb. 23, 1982.

M. David Eckersley, Salt Lake City, for plaintiff and appellant.

Craig S. Cook, Max D. Wheeler, J. Anthony Eyre, Salt Lake City, for defendants and respondents.

HALL, Chief Justice:

Plaintiff brought this action against Lyman Products for Shooters, a firearm distributing company, and its parent company, The Leisure Group, Inc., on a strict product liability theory. Following a special jury verdict in favor of defendants, the trial court rendered a judgment of no cause of action. Plaintiff appeals on the ground of improper admission of expert testimony by the trial court.

Plaintiff purchased a rifle distributed by Lyman Products in the summer of 1976 and fired it approximately 50 to 75 times without incident. On September 15, 1976, as plaintiff fired the rifle, it exploded in the area of the breech, injuring his wrist and hand. Plaintiff claims that the explosion was caused by a defect in the design of the rifle which, by incorporating a "dovetail" notch into the barrel, rendered it too weak to withstand the pressure of exploding gun powder. Plaintiff testified that he had always loaded the weapon with black powder, as recommended by the manufacturer, and that he had followed proper procedures in handling and firing it.

Defendants claim that plaintiff's rifle was designed safely and that it could not have exploded under the pressure created by black powder. Defendants introduced evidence to show that plaintiff had actually loaded the rifle with smokeless powder,

which explodes with much greater force than black powder. This evidence included testimony by an analytic chemist, Dr. Milton Lee, concerning chemical analysis of the residue taken from plaintiff's exploded gun barrel. Dr. Lee testified that gas chromatography and mass spectrometry tests of this residue revealed the existence of the major components of smokeless powder and not those of black powder.

Plaintiff's sole argument on appeal is that Dr. Lee had insufficient personal knowledge to testify concerning chemical analysis of the gun barrel residue because he had not personally performed the tests involved. Dr. Lee testified that the actual collection, extraction, chromatography and spectrometry of the residue had been performed by an assistant in his laboratory and that his own participation had consisted of designing and directing the tests, periodically checking the testing in process and interpreting the results. Plaintiff asserts that Dr. Lee's testimony failed to establish either the qualifications of his assistant or a complete chain of custody over the gun barrel sample. Plaintiff claims that without such foundation this testimony should not have been admitted.

However, assuming *arguendo* that the trial court erred in admitting Dr. Lee's testimony, such error does not rise to the level of prejudicial error unless there is a reasonable likelihood that the jury would have reached a different result if the error had not occurred.[1] In this case, substantial evidence supports the special verdict of the jury even if the testimony of Dr. Lee is entirely disregarded.

In order to recover against defendants, plaintiff had the burden of showing an unreasonably dangerous defect in the rifle distributed by defendants.[2] In the absence of such a showing, the jury could not have found defendants liable even if defendants had failed to present any evidence whatsoever in their own favor.

Plaintiff's theory of the cause of the explosion depended on two premises: first, that the use of a "dovetail" notch in the construction of the rifle barrel created a danger of explosion at pressures greater than 23,000 pounds per square inch and, second, that such pressures could foreseeably be generated by normal use of the rifle. Plaintiff produced four experts who testified to the first of these premises, but presented no testimony showing the pressures actually generated by firing the rifle with black powder. None of plaintiff's experts testified that normal use of the rifle in question could create any actual danger of explosion. In fact, plaintiff's final expert witness testified that he himself had owned rifles of similar construction and that he would be willing to fire one if properly loaded.

Defendants presented testimony by Martin Kordas, chief engineer of a firearms manufacturing company, to show that a normal charge of black powder could be expected to generate a maximum pressure of 13,000 pounds per square inch, but that the pressure actually exerted on the "dovetail" notch area would be roughly thirty percent less than the maximum. Mr. Kordas agreed that the rifle in question was not designed to withstand pressures greater than 23,000 pounds per square inch, but he testified that it would be impossible to fit enough black powder in the rifle to produce pressures of that magnitude.

Mr. Kordas also testified that he had conducted pressure tests on rifle barrels having a barrel strength and a notch design "very close" to those of plaintiff's rifle. Mr. Kordas stated that he had loaded these barrels with black powder charges of up to four times the recommended quantity and as many as twelve patched balls and that he even had obstructed some of the barrels, but that none of the barrels had exploded upon firing.

The above evidence provided the jury with a substantial basis for concluding that

1. *Brunson v. Strong*, 17 Utah 2d 364, 412 P.2d 451 (1966).

2. Restatement Second of Torts, § 402A, comment g. (1965); *Ernest W. Hahn, Inc. v. Armco Steel Co.*, Utah, 601 P.2d 152 (1979).

plaintiff's rifle contained no unreasonably dangerous defect. That the jury did in fact so conclude is shown by the following interrogatory and answer:

A.  Do you find that, as of the date the black powder rifle in question left the hands of the defendants, it was in a defective condition unreasonably dangerous when used in the normal and expected manner?

ANSWER: No.

In addition to the evidence which supports the finding of the absence of any defect in the rifle, defendants presented evidence separate and apart from Dr. Lee's testimony to show that the rifle had been loaded with smokeless powder. Mr. Kordas stated that he had examined the residue on the exploded rifle barrel before its removal for chemical analysis, that this residue had resembled smokeless powder and that he had neither seen nor smelled any trace of black powder on the barrel. According to Mr. Kordas, smokeless powder and black powder are readily distinguishable because the former is cleaner and has a gray-white color. Examining the exploded barrel at trial, Mr. Kordas again identified traces of what appeared to him to be smokeless powder.

In making its determination as to the type of powder used, the jury also had the opportunity to examine the exploded rifle itself. Having heard testimony from at least three different witnesses as to the relative characteristics of black and smokeless powder residue, the jurors were able to make their own first-hand observations concerning the residue on plaintiff's rifle barrel. The jurors also had the benefit of substantial expert testimony concerning the likely appearance and condition of a black powder rifle after being fired with smokeless powder.

The evidence described above, independent of Dr. Lee's testimony, substantially supports the special verdict and the judgment of the trial court. Plaintiff advances no contentions that Dr. Lee's testimony constituted the only substantial evidence in favor of defendants or that its exclusion would have altered the jury verdict. We therefore conclude that the trial was conducted free of prejudicial error.

Affirmed. Costs to defendants.

STEWART, OAKS, HOWE and DURHAM, JJ., concur.