Clinton **PATTEN** et al., Plaintiffs,

v.

**LEDERLE LABORATORIES,**
**Defendant.**

Civ. No. 85–C–0883G.

United States District Court,
D. Utah, C.D.

Nov. 2, 1987.

234

Lynn C. Harris, Boyd McDowell, III, Chicago, Ill., for plaintiffs.

JoAnn Zaleskas, Thomas L. Kay, Mark O. Morris, Santa Monica, Cal., for defendant.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This matter came before the court on July 14, 1987 pursuant to defendant's Motion for Instruction. Lederle Laboratories ("Lederle") was represented by JoAnn Zaleskas, Thomas L. Kay and Mark O. Morris. Clinton and Shanna Patten (the "Pattens") were represented by Lynn C. Harris and Boyd McDowell III. The parties submitted memoranda and presented oral argument, after which the court took the matter under advisement and reserved ruling on the motion until the court had heard evidence at the time of trial. Lederle also represented at the hearing that it intended to file a Motion to Bifurcate the trial on the issues of causation and liability/damages. The court allowed the parties time to fully brief the issue, and the parties agreed the matter would be deemed submitted on the briefs, without further argument. Being now fully advised with respect to both motions, the court sets forth its Memorandum Decision and Order.

### FACTS

In 1984, Shane Patten then a two-month-old infant was vaccinated with Tri–Immunol, a DPT vaccine manufactured by Lederle. He died one day later. His parents brought this suit against Lederle alleging that Tri–Immunol was the cause of Shane's death. The Pattens have pled causes of action in strict liability, negligence, and breach of warranty.

### ANALYSIS

#### I. MOTION FOR INSTRUCTION

One of the Patten's claims is that Tri–Immunol is a defectively designed product, unreasonably dangerous to the user, subjecting Lederle to strict liability under Section 402A of the Restatement (Second) of Torts. In this motion Lederle asks the

court for an instruction that Comment k to § 402A is the law of Utah to be applied in this case. The court notes first that the Utah Supreme Court has made no pronouncement with regard to the applicability of comment k. In cases where the highest court of a state has not spoken, federal courts sitting in diversity routinely predict how the state's highest court would rule.[1]

### A. *Adoption of Comment K in Utah*

In *Hahn v. Armco Steel Co.,* 601 P.2d 152, 158 (Utah 1979) the Utah Supreme Court adopted § 402A.[2] Since then the court has adhered to § 402A and its accompanying comments.[3] Further, the court has frequently looked to the Restatement and its comments for guidance in other cases of first impression.[4] Those of Utah's sister states that have considered the question have adopted some form of comment k as well.[5] Since Utah characteristically has followed the position of the Restatement, and since the great majority of Utah's sister states have already adopted comment k, this court holds that comment k to § 402A is the law of Utah to be applied in this case.

### B. *Application of Comment K*

Simple adoption of Comment k does not solve the problems associated with its application. Section 402A of the Restatement (Second) of Torts provides a special rule for liability without regard to fault for one who sells any product in a defective condition unreasonably dangerous to the consumer.[6] Comment k provides an exception precluding strict liability for "unavoidably unsafe" products.[7]

---

1.  *Weiss v. United States,* 787 F.2d 518, 525 (10th Cir.1986); *Diatom Inc. v. Pennwalt Corp.,* 741 F.2d 1569, 1574–75 (10th Cir.1984). Indeed, the United States Supreme Court has noted that when a federal court's jurisdiction is properly invoked it is the court's duty to decide state law questions necessary for disposition of the case, and that a federal court should not hesitate to decide such questions of state law, "although the highest court of the state had not answered them, the answers were difficult, and the character of the answers which the highest state courts might ultimately give remained uncertain." *Meredith v. Winter Haven,* 320 U.S. 228, 237, 64 S.Ct. 7, 12, 88 L.Ed. 9 (1943); *see also McNeese v. Board of Education,* 373 U.S. 668, 673 n. 5, 83 S.Ct. 1433, 1436 n. 5, 10 L.Ed.2d 622 (1963).

2.  The Tenth Circuit, prior to Utah's adoption of § 402A, had predicted Utah would adopt the strict liability doctrine. *Julander v. Ford Motor Co.,* 488 F.2d 839, 844 (10th Cir.1973); *Smith v. Clayton & Lambert Mfg. Co.,* 488 F.2d 1345, 1349 (10th Cir.1973); *McGrath v. Wallace Murray Corp.,* 496 F.2d 299, 302 n. 3 (10th Cir.1974); *Shuput v. Heublein, Inc.,* 511 F.2d 1104, 1105 (10th Cir.1975); *Rigby v. Beech Aircraft Co.,* 548 F.2d 288, 290–91 (10th Cir.1977).

3.  *See Mulherin v. Ingersoll–Rand Co.,* 628 P.2d 1301 (Utah 1981) (applying § 402A); *Dowland v. Lyman Products for Shooters,* 642 P.2d 380, 381 n. 2 (Utah 1982) (applying comment g).

4.  *See Beach v. University of Utah,* 726 P.2d 413, 415–16 (Utah 1986) (applying Restatement § 314A and § 314A comment b); *Morgan v. Quailbrook Condominium Co.,* 704 P.2d 573 (Utah 1985) (applying Restatement § 825, and § 825 comments c & d).

5.  *See Toner v. Lederle Laboratories,* 112 Idaho 328, 732 P.2d 297 (1987); *Johnson v. American Cyanamid Co.,* 239 Kan. 279, 718 P.2d 1318 (1986); *Belle Bonfils Memorial Blood Bank v. Hansen,* 665 P.2d 118 (Colo.1983) (en banc); *Kearl v. Lederle Laboratories,* 172 Cal.App.3d 812, 218 Cal.Rptr. 453 (1985); *Brown v. Superior Court,* 192 Cal.App.3d 150, 227 Cal.Rptr. 768 (1986).

6.  § 402A provides:
    (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
    (a) the seller is engaged in the business of selling such a product, and
    (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
    (2) The rule stated in Subsection (1) applies although
    (a) the seller has exercised all possible care in the preparation and sale of his product, and
    (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

7.  § 402A comment k in its entirety provides:
    k. *Unavoidably unsafe products.* There are *some products* which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are *especially common in the field of drugs.* An outstanding example is the vaccine for the Pasteur treatment of rabies, which not uncommonly leads to very serious

A number of vexing questions arise in applying comment k in a particular case. By its terms comment k excepts unavoidably unsafe products from strict liability only to the extent plaintiff alleges a design defect; comment k's immunity from strict liability does not extend to strict liability claims based on some manufacturing flaw or on inadequacy of warning. The comment provides that an unavoidably unsafe product *"properly prepared, and accompanied by proper directions and warning,* is not defective, nor is it unreasonably dangerous." (emphasis added). The comment also provides, "The seller of such products *again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it,* is not to be held to strict liability for unfortunate consequences attending their use...." (emphasis added). Thus, a seller remains strictly liable if the product, otherwise "unavoidably unsafe," is defective because it is improperly manufactured or is accompanied by inadequate warning. Of course, whether a product is improperly manufactured or accompanied with improper warnings is usually a question of fact to be decided by the jury in each particular cases. This limitation on the scope of comment k immunity is universally recognized.[8]

Some courts have taken the view that Comment k applies to all design defect claims involving prescription drugs as a matter of law. *See, e.g., Brown,* 227 Cal. Rptr. at 772, 774; *cf. Johnson,* 718 P.2d at 1323. However, as this court sees it, comment k does not provide blanket immunity to *all* prescription drugs. The language of the comment indicates it is to apply to only "some" products. In the comment the Reporter notes that unavoidably unsafe products "are especially common in the field of drugs," and the Reporter cites the Pasteur treatment for rabies as an example of a product deserving comment k protection. It is then noted that "the same is true of many other drugs, vaccines, and the like," and "in particular of many new or experimental drugs," but the Reporter does not indicate that it is true of all prescription drugs. Prescription drugs are not necessarily so designed that they cannot currently be made safer, and sometimes there are more suitable alternatives. Also, the benefits of particular drugs do not necessarily outweigh their discovered risks in every instance. *See Brochu,* 642 F.2d at 655; *Singer v. Sterling Drug, Inc.,* 461 F.2d 288, at 290–91 (1972). The court considers that extending comment k protection to an entire class of products would be unwise in

and damaging consequences when it is injected. Since the disease itself invariably leads to a dreadful death, both the marketing and the use of the vaccine are fully justified, notwithstanding the unavoidable high degree of risk which they involve. *Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it unreasonably dangerous.* The same is true of many other drugs, vaccines, and the like, many of which for this very reason cannot legally be sold except to physicians, or under the prescription of a physician. It is also true in particular of many new or experimental drugs as to which, because of lack of time and opportunity for sufficient medical experience, there can be no assurance of safety, or perhaps even of purity of ingredients, but such experience as there is justifies the marketing and use of the drug notwithstanding a medically recognizable risk. The seller of such products, again with the qualification that they are *properly prepared and marketed, and proper warning is given, where the situation calls for it,* is not to be held to strict liability for unfortunate consequences attending their

use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk.
(Emphasis added.)

8. *See Toner v. Lederle Laboratories,* 112 Idaho 328, 732 P.2d 297, 305 (1987); *Brochu v. Ortho Pharmaceutical Corp.,* 642 F.2d 652, 657 (1st Cir.1981); *Reyes v. Wyeth Laboratories,* 498 F.2d 1264, 1276 (5th Cir.), *cert. denied,* 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688 (1974); *Davis v. Wyeth Laboratories, Inc.,* 399 F.2d 121, 128–29 (9th Cir.1968); *Yarrow v. Sterling Drug, Inc.,* 263 F.Supp. 159, 163 (D.S.D.1967), *aff'd,* 408 F.2d 978 (8th Cir.1969); *Kearl v. Lederle Laboratories,* 172 Cal.App.3d 812, 218 Cal.Rptr. 453, 465 (1985); *Feldman v. Lederle Laboratories,* 97 N.J. 429, 479 A.2d 374, 384 (N.J.1984); V. Schwartz, *Unavoidably Unsafe Products: Clarifying the Meaning and Policy Behind Comment k,* 42 Wash. & Lee L.Rev. 1139, 1141 (1985); S. Willig, *The Comment k Character: A Conceptual Barrier to Strict Liability,* 29 Mercer L.Rev. 545, 546, 575 (1978).

light of the requirements comment k specifies as prerequisite to its application.

### 1. The "Unavoidably Unsafe" Requirement

Since comment k is an affirmative defense, it is the defendant's burden to demonstrate that his product comes within its protection. The defendant must establish that the product is unavoidably unsafe, that is, that the product's risk in fact is unavoidable. To use the language of comment k, the product must "in the present state of human knowledge, [be] quite incapable of being made safe for [its] intended and ordinary use." Restatement (Second) of Torts § 402A, comment k. Courts typically have considered two factors in determining whether a product's risk is unavoidable:

> (i) whether the product was designed to minimize—to the extent scientifically knowable at the time of distribution—the risk inherent in the product, and (ii) the availability—again, at the time of distribution—of any alternative product that would have *as effectively* accomplished the *full intended purpose* of the subject product.

Kearl, 172 Cal.App.3d at 830, 218 Cal.Rptr. at 464; see also Toner, 732 P.2d at 305–06. As the *Kearl* court notes, the evaluation of the avoidability of a product's risk should be made in light only of information available at the time the product is distributed to the plaintiff. Comment k does not require that sellers be omniscient, but it does hold them to the current state of the art. The product must be incapable of being made safe "in the present state of human knowledge." Restatement (Second) of Torts § 402A, comment k. Thus, "knowl-edge of the product's risks based on reliable and obtainable information is imputed to the seller," Toner, 732 P.2d at 307, and "if new developments make possible a safer design, at that point further distributions of the product are not protected by comment k." Id.

### 2. The "Apparently Useful and Desirable" Requirement

Of those products whose risks are unavoidable, comment k shields only those which are "apparently useful and desirable ... [although] attended with a known [9] but apparently reasonable risk." Restatement (Second) of Torts § 402A, comment k. Thus, the defendant must demonstrate that, weighing the benefits of the product against its risks, it is apparently useful and desirable. If the product confers an exceptionally important benefit, the interest in availability will outweigh the interest in promoting enhanced accountability. Only in such cases should the product be exempted from strict products liability. See Kearl, 172 Cal.App.3d at 830, 218 Cal.Rptr. at 464. In weighing the benefits of the product against its risks, "[t]he scales must clearly tip in favor of the benefits for comment k to apply." Toner, 732 P.2d at 306. "It does not serve society that an unavoidably unsafe product, which has occasional or fractious benefit, should enjoy insulation from strict liability in tort when the product's predominant effects are detrimental to individual and public safety." Willig, The Comment k Character: A Conceptual Barrier to Strict Liability, 29 Mercer L.Rev. 545, 545 (1978).

Like evaluation of the risk, the weighing of costs and benefits should be

---

9. The scope of the term "known but apparently reasonable risk" has been the focus of some controversy. Some courts have held this term to exclude from coverage harms which were unknown at the time of distribution. *See Belle Bonfils*, 665 P.2d at 123. This reading is not persuasive. The comment specifically includes within its coverage "many new or experimental drugs as to which, because of lack of time and opportunity for sufficient medical experience, there can be no assurance of safety, or perhaps even purity of ingredients, but such experience as there is justifies the marketing and use of the drug notwithstanding a medically recognizable risk." A better reading of the "known risk" language includes unknown harms:

> When comment k then refers to "a known but apparently reasonable risk," it refers not to specific side-effects or other hazards known at the time of distribution, but rather to what is known to be the over-all risk of the product, perhaps including the possibility of unknown side-effects or other hazards in addition to those already known.

Toner, 732 P.2d at 307; accord Schwartz, supra at 1144–45.

made in light of the best information available at the time the product was distributed to the plaintiff. If, weighing that information, the product was "apparently useful and desirable," no strict liability should attach. To read comment k otherwise would remove the basic public policy thrust behind the comment—"to encourage the development of new drugs that have the potential for conquering disease." Schwartz, *supra,* at 1144.

## II. MOTION TO BIFURCATE

 Lederle has moved the court to bifurcate the trial in this case under Rule 42(b) of the Federal Rules of Civil Procedure.[10] Lederle asks the court to require trial on the issue of causation prior to trying the issues of liability and damages. Lederle argues that causation is a threshold issue, and that significant time and expense will be saved if the Pattens are unable to prove that Lederle's DTP vaccine caused Shane Patten's death. Further, Lederle argues that bifurcation is within the power of the court and will promote judicial economy, convenience of the parties, and efficiency in this case.

The Pattens submit that their proof on causation would require introduction of evidence concerning the nature of Lederle's product. They argue that Lederle produced a whole cell vaccine which was designed to include toxins, specifically "endotoxin" and "pertussis toxin." In describing the reaction Shane Patten allegedly suffered up to and including the time of his death, the Pattens represent that their expert will need to explain the toxic properties of Lederle's DTP vaccine and the known actions of these toxins in the human body. Further, the plaintiffs note other overlaps in the evidence to be presented at the two trials, and that they will face additional expense of having at least one of their experts testify on two occasions.

**10.** Rule 42(b) provides as follows:
The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or

The court notes that the language of Rule 42(b) is precatory. It allows the court to order separate trials, but does not require it in any case. Thus, the presumption is that the plaintiff, in a typical case, should be allowed to present her case in the order she chooses. The burden is on the defendant, Lederle, to convince the court "that a separate trial is proper in light of the general principle that a single trial tends to lessen the delay, expense and inconvenience to all parties." *McCrae v. Pittsburgh Corning Corp.,* 97 F.R.D. 490, 492 (E.D.Pa.1983). Although time and resources might be saved if Lederle were to win in a separate trial on the causation issue, the court is persuaded that this consideration is outweighed by the almost certain prejudice Lederle's suggested bifurcation would cause the Pattens. Further, the savings of time and expenses Lederle suggests would result from bifurcation are speculative at best. Accordingly, Lederle's motion to bifurcate is denied.

This Memorandum Decision and Order will suffice as the court's final action on this motion; no further Order need be prepared by counsel.

of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.