KAREN GLASSMAN, Plaintiff-Appellant, v. WYETH LABORATORIES, INC., Defendant-Appellee.

First District (3rd Division)   No. 1—90—3176

Opinion filed November 12, 1992.

Randall F. Peters & Associates, of Chicago (Randall F. Peters, of counsel), for appellant.

Wildman, Harrold, Allen & Dixon, of Chicago, for appellee.

JUSTICE CERDA delivered the opinion of the court:

Plaintiff, Karen Glassman, appeals from the granting of summary judgment in favor of defendant, Wyeth Laboratories, Inc., in her products liability action that alleged she suffered a stroke because of ingesting Ovral, an oral contraceptive drug manufactured by defendant. Plaintiff argues that: (1) the existence of numerous other drugs and devices to avoid or terminate pregnancy prevents a manufacturer of an oral contraceptive from claiming the unavoidably unsafe product exception to strict liability; (2) there was a question of fact whether Ovral was unreasonably dangerous because of its inherent capacity to cause strokes and hemiplegia; and (3) there was a question of fact whether Ovral was the proximate cause of plaintiff's injuries.

Plaintiff alleged the following in count I of the complaint. From 1970 through April 17, 1980, plaintiff took the prescription drug Ovral for the purpose of avoiding pregnancy. Ovral was in a defective condition that made it unreasonably dangerous because, *inter alia*: (1) Ovral had an inherent capacity to produce stroke and hemiplegia; (2) defendant knew or should have known that Ovral had that dangerous propensity; and (3) defendant failed to adequately warn plaintiff of that dangerous propensity. As a proximate result, plaintiff suffered a stroke and hemiplegia on or about April 17, 1980.

Count II alleged that defendant was negligent in, *inter alia*, failing to adequately design Ovral and to adequately warn of its dangerous condition. Count III alleged that defendant breached the implied warranty of merchantability that Ovral was fit for the ordinary purposes for which such goods were used. Count IV alleged that defendant breached the implied warranty that Ovral was fit for the particular purpose for which it was sold to plaintiff.

Defendant argued in a motion for summary judgment, *inter alia*, that: (1) Ovral was properly designed, manufactured, and labeled; (2) Ovral was not unreasonably dangerous or defective; (3) Ovral was fit for the ordinary purposes for which such goods were used and was fit for the particular purpose for which it was allegedly sold to plaintiff; and (4) the injuries suffered by plaintiff were not caused by any defect in the manufacture, packaging, or labeling of the product, and therefore defendant was not liable to plaintiff for any damages.

Theodore King, M.D., swore in a supporting affidavit that: (1) he was familiar with the chemical composition, labeling, and packaging of Ovral; and (2) his opinion, based upon a reasonable degree of medical and scientific certainty, was that: (a) Ovral was properly designed, manufactured, labeled, and fit for the ordinary purposes for which such goods were used and for the particular purpose for which it was allegedly sold to plaintiff; (b) Ovral did not have an inherent capacity to produce stroke and hemiplegia; (c) Ovral did not have a faulty design; (d) defendant did not fail to use reasonable diligence to see that Ovral was reasonably fit for its intended use; and (e) Ovral was not unreasonably dangerous or defective.

Plaintiff filed a "partial response to motion for summary judgment," in which she argued that oral contraceptives greatly increased the risk of stroke.

Summary judgment was entered in favor of defendant, and plaintiff moved for reconsideration. Plaintiff argued that an attached affidavit of Dr. James Bryant, a forensic pathologist, directly conflicted with Dr. King's affidavit because Dr. Bryant's opinion was that Ovral had an inherent capacity to produce stroke and hemiplegia and that it had such an effect in numerous instances. The trial court found a question of fact and vacated its prior order of summary judgment to the extent that there was an issue of fact concerning the unreasonable dangerousness of Ovral.

Defendant filed another motion for summary judgment. It argued that: (1) under comment *k* to section 402A of the Restatement of Torts, Second (Restatement (Second) of Torts §402A, Comment *k* (1965)), the giving of adequate warnings about the risks of an unavoidably unsafe drug was a defense; and (2) plaintiff failed to produce any evidence that Ovral was the proximate cause of her injuries. Plaintiff filed a memorandum in opposition in which she argued that there was a genuine issue of material fact whether Ovral was unreasonably dangerous regardless of any warnings.

Dr. Bryant's affidavit in support of plaintiff's memorandum in opposition swore that: (1) he reviewed medical literature describing clini-

cal and experimental studies detailing the pathophysiological consequences from the use of Ovral and was knowledgeable about statistics that revealed a high number of cerebral vascular accidents occurring to young women in childbearing years as a result of Ovral; (2) he also reviewed deposition testimony, correspondence, and medical records; (3) Ovral created a significant risk of cerebral vascular accidents; (4) the only use for Ovral was to prevent pregnancy, and such objective could be accomplished in other ways without physical risk; (5) Ovral's ratio of medical risk to medical benefit was infinitely great and unlimited; (6) Ovral was unreasonably dangerous and should not be sold; and (7) the unreasonably dangerous condition of Ovral was not cured or eliminated by warnings. Dr. Bryant swore in a second affidavit that, within a reasonable degree of medical certainty, the stroke suffered by plaintiff was a proximate result of regular use of Ovral.

Defendant's second motion for summary judgment was granted, and the cause was dismissed. Plaintiff filed a motion for reconsideration.

Dr. Bryant swore in an affidavit supporting plaintiff's motion for reconsideration that: (1) he reviewed medical literature on Ovral, including reports to the Food and Drug Administration (FDA) of adverse reactions to Ovral from 1965 to 1975; (2) the FDA had reports of 549 incidents of adverse reactions associated with the use of Ovral during 1965 to 1975; (3) of the 549, 250 incidents (or 45%) related to the cerebral vascular system, which was an inordinate number of adverse reactions; (4) out of the 250 events related to the cerebral vascular system an inordinate number of events (or about 35%) included brain involvement such as stroke and resulting hemiplegia or quadriplegia: (5) Ovral had the inherent capacity to produce stroke and hemiplegia; (6) use of Ovral created a significant risk of cerebral vascular occurrence, including stroke; (7) the cerebral vascular accident suffered by plaintiff was a proximate result of her regular use of Ovral; (8) pregnancy could be prevented in other ways without the physical risks presented by Ovral; (9) Ovral's medical risk greatly outweighed the medical benefit; (10) Ovral was unreasonably dangerous and should not be available to the public; and (11) Ovral's unreasonably dangerous condition was not cured by warnings.

Plaintiff's motion for reconsideration was denied, and plaintiff appeals from the denial of her motion.

At oral argument, plaintiff waived the argument raised in her brief that it was a question of fact whether defendant's warnings regarding Ovral's dangers were sufficient. Therefore, we do not address

that issue or the related issue of the applicability to oral contraceptives of the learned intermediary doctrine.

Plaintiff argues that summary judgment should not have been entered in favor of defendant because the unavoidably unsafe exception to strict products liability provided by comment *k* to section 402A of the Restatement of Torts (Restatement (Second) of Torts §402A, Comment *k* (1965)) did not apply to Ovral because: (1) there were numerous alternatives to Ovral for birth control; (2) a pregnant woman neither is threatened with death nor suffers from a disease, in contrast to comment *k*'s example of a person who contracts rabies; and (3) Ovral was not a new or experimental product.

■■ Section 402A has been adopted in Illinois. (See, *e.g., Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 516-17, 513 N.E.2d 387, 391.) It states:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller." Restatement (Second) of Torts §402A (1965).

Comment *k* to section 402A is captioned "unavoidably unsafe products" and states:

"There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs. An outstanding example is the vaccine for the Pasteur treatment of rabies, which not uncommonly leads to very serious and damaging consequences when it is injected. Since the disease itself invariably leads to a dreadful death, both the marketing and the use of the vaccine are fully justified, notwithstanding the unavoidable high degree of risk which they involve. Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it *unreasonably* dangerous. The same is true of many other

drugs, vaccines, and the like, many of which for this very reason cannot legally be sold except to physicians, or under the prescription of a physician. It is also true in particular of many new or experimental drugs as to which, because of lack of time and opportunity for sufficient medical experience, there can be no assurance of safety, or perhaps even of purity of ingredients, but such experience as there is justifies the marketing and use of the drug notwithstanding a medically recognizable risk. The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk." (Emphasis in original.) (Restatement (Second) of Torts §402A, Comment *k*, at 353-54 (1965).)

Comment *k* also has been adopted in Illinois. *E.g., Kirk*, 117 Ill. 2d at 517, 513 N.E.2d at 392.

Plaintiff interprets "unavoidably unsafe" as applying only to products that provide benefits that cannot be achieved in any other manner. Plaintiff finds support in the dissenting opinion of *Ortho Pharmaceutical Corp. v. Heath* (Colo. 1986), 722 P.2d 410, 421, which argued against applying comment *k* to an oral contraceptive because: (1) the basic benefit of prevention of pregnancy was achievable through other birth control methods that did not require ingestion of estrogen; and (2) the existence of other birth control methods made the product's risks avoidable. The dissent questioned whether the prevention of pregnancy was a unique or profound benefit in comparison to the importance of the prevention of rabies by a vaccine, which comment *k* was intended to cover. *Heath*, 722 P.2d at 421.

Plaintiff also cites the following cases, which involved vaccines. *Toner v. Lederle Laboratories* (1987), 112 Idaho 328, 337, 732 P.2d 297, 306, stated that an element of unavoidable risk was the lack of a feasible alternative design that on balance accomplished the product's purpose with a lesser risk. In *White v. Wyeth Laboratories, Inc.* (1988), 40 Ohio St. 3d 390, 395, 533 N.E.2d 748, 753, the Ohio Supreme Court held that a product was unavoidably unsafe if "at the time of distribution, there existed no alternative design which would have as effectively accomplished the same purpose or result with less risk." *Patten v. Lederle Laboratories* (D. Utah 1987), 676 F. Supp. 233, 237, held that one factor typically considered in determining

whether a product's risk was unavoidable was the availability of any alternative product that would have as effectively accomplished the full intended purpose of the product.

Some foreign jurisdictions have applied comment *k* to birth control pills and devices. See, *e.g.*, *Ortho Pharmaceutical Corp. v. Chapman* (1979), 180 Ind. App. 33, 38, 388 N.E.2d 541, 545 (oral contraceptives were protected by comment *k* because the potential danger was not outweighed by the benefits of a convenient and highly effective contraceptive); *Chambers v. G.D. Searle & Co.* (D. Md. 1975), 441 F. Supp. 377, 381 (oral contraceptives are products covered by comment *k* because they are useful and desirable), *aff'd* (4th Cir. 1977), 567 F.2d 269; *Terhune v. A.H. Robins Co.* (1978), 90 Wash. 2d 9, 12, 577 P.2d 975, 977 (comment *k* was applied to an intrauterine birth control device).

Comment *k* was intended to apply to products that are apparently useful and desirable, and it is not limited to new or experimental products. But not all prescription drugs *per se* fall under comment *k*, and comment *k*'s applicability must be decided on a case-by-case basis. (*Toner*, 112 Idaho at 337, 732 P.2d at 308-09.) Although an oral contraceptive used for birth control purposes does not serve the function of a drug or vaccine in treating or preventing disease, which were examples given in comment *k*, and although there exist other birth control products, an oral contraceptive is a convenient and effective form of birth control. An oral contraceptive is an apparently useful and desirable product, and comment *k* should apply to a particular oral contraceptive if the conditions of comment *k* are met, *i.e.*, the product is unavoidably unsafe and is properly prepared, and there are adequate directions and warnings. Comment *k* should protect manufacturers of desirable and useful products from strict liability for those products, even if the benefits could be obtained with another product, because otherwise manufacturers would be discouraged from manufacturing new products that might confer new advantages over existing products that have the same purpose.

The court in *Lawson v. G.D. Searle & Co.* (1976), 64 Ill. 2d 543, 551, 356 N.E.2d 779, 783, impliedly applied comment *k* to a particular contraceptive drug by holding that the jury could have found that adequate warnings prevented the drug from being considered unreasonably dangerous. But the case did not address the issue whether comment *k* applies to contraceptive drugs as a class.

■■ Whether a product is unavoidably unsafe within the meaning of comment *k* is an issue of material fact (*Graham v. Wyeth Laboratories* (D. Kan. 1987), 666 F. Supp. 1483, 1497), and a defendant has the

burden to demonstrate that a product comes under comment $k$'s protection (*Patten v. Lederle Laboratories* (D. Utah 1987), 676 F. Supp. 233, 237). Dr. King's affidavit, filed in support of defendant's motion for summary judgment, did not provide factual support for his conclusion that Ovral was properly designed and manufactured. (See Supreme Court Rule 191 (134 Ill. 2d R. 191) (affidavits made in support of a motion for summary judgment are to be made on the personal knowledge of the affiants, shall set forth with particularity the facts upon which the defense is based, and shall not consist of conclusions but of facts admissible in evidence).) Therefore, defendant was not entitled to summary judgment on the basis that Ovral was unavoidably unsafe under comment $k$.

■ Defendant argues that summary judgment was proper on the alternative basis that there were no facts supporting plaintiff's allegation that Ovral was unreasonably dangerous. Plaintiff argues that Dr. Bryant's first affidavit created an issue of fact of Ovral's unreasonable dangerousness.

Section 402A provides for strict liability in the case of a product "in a defective condition unreasonably dangerous." (Restatement (Second) of Torts §402A (1965).) According to comment $g$, a product is in a "defective condition" if it is "in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him." Restatement (Second) of Torts §402A, Comment $g$, at 351 (1965).

Dr. King swore in his affidavit that Ovral did not have a propensity to cause stroke and hemiplegia and was not unreasonably dangerous. But these conclusions were not based on facts set forth in his affidavit. In contrast, Dr. Bryant's affidavit supplied some data on Ovral's dangerousness, *i.e.*, 250 out of 549 adverse reactions to Ovral reported to the FDA related to the cerebral vascular system, and 87 out of 549 adverse reactions related to the brain, including strokes with resulting hemiplegia or quadriplegia. The significance of the number of the adverse reactions cannot be determined without knowing how many women ingested Ovral without adverse reaction, *e.g.*, if 100 million women ingested Ovral and there were only 250 adverse reactions involving the cerebral vascular system, then the risk might be acceptably low. Nevertheless, the existence of serious adverse reactions raised a genuine issue of fact concerning Ovral's unreasonable dangerousness. Therefore, summary judgment should not have been granted in favor of defendant; on this record, it could not be found as a matter of law that Ovral was not unreasonably dangerous. Ill. Rev. Stat. 1991, ch. 110, par. 2—1005 (summary judgment is to be ren-

dered if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law).

■ Defendant argues as another alternative basis for upholding the entry of summary judgment in its favor that plaintiff had to show that the alleged failure to warn caused plaintiff's injuries. But plaintiff has waived on appeal the issue of the sufficiency of warnings, and defendant does not argue that there was no genuine issue of fact whether Ovral proximately caused plaintiff's injuries.

The judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

GREIMAN, P.J., and RIZZI, J., concur.